WILLIAM S. MONROE, Executor, *v.* WILLIAM JONES, et al.

A will directed the executor to sell the real estate, and to apply the proceeds to
the payment of debts and legacies. The proceeds were insufficient for that
purpose. A subsequent provision of the will gave the rest and residue of the
personal estate to certain legatees. *Held,* that the real, upon such direction,
was to be treated as personal, and the debts and specific legacies paid out of
the entire estate.

THIS was a bill in equity, to determine whether the legacies
were to be paid out of both the real and personal estate devised
in the will of Sarah J. Monroe. The questions raised upon the
bill, and the answers of the various parties interested, were cer-
tified by the Chief justice for hearing before the full bench.
The provisions of the will, containing many special legacies,
are sufficiently quoted in the briefs and in the opinion of the
court.

The bill, in the nature of a bill of interpleader, was brought by B. T. Eames. The cause was argued by *Gerald & Bliss* for the residuary legatees, upon the following brief:—

This is a proceeding in the nature of a bill of interpleader, asking the court to construe a will of which the following is an abstract:—

"I give, devise and bequeath to my Executor all my real estate, situated in the town of East Providence, in the county of Providence, in the State of Rhode Island, in trust, to be sold by him, as soon as may be after my decease, at public auction, and the proceeds of such sale, to be used by him in the payment of the debts and charges hereinafter named, and the legacies bequeathed."

Then follow certain legacies of money and of specific articles. Then, " I hereby appoint William S. Monroe sole Executor of this my last will and testament." Sundry directions to the executor follow which have no bearing upon this case. Then, " I give and bequeath to the said Charles W. Lawton, John S. Douglass, Jr., and Oscar Douglass, all the residue and remainder of my personal estate, to be equally shared by and between them." The final clause (except " In testimony," &c.) reads, " I direct my executor, in case my property should not be sufficient for the payment of the debts, charges and legacies herein mentioned, that, after the payment of my just debts and the charges above mentioned, the balance shall be placed at interest by him until the amount shall be sufficient to pay said legacies."

It is claimed by all the legatees, except those named in the residuary clause, that the testatrix intended to create a common fund of all her property both real and personal. The residuary legatees claim that the personal property, excepting only the articles specifically bequeathed, ought not to be blended with the fund arising from the sale of the real estate, but belongs to, and ought to be paid to, them. The first section of the will, which is above quoted, devises the *real estate* to the executor for certain purposes which are therein clearly and distinctly set forth, and among which is the payment of legacies. A clearly expressed intention in one portion of the will, is not to yield to

a doubtful construction in any other portion of the instrument. 1 Redfield on Wills, 433–435. The 12th Rule of Mr. Jarman applies. Jarman on Wills, Am. Ed. with notes by Perkins, Vol. 2, p. 525. "That an express and positive claim cannot be controlled by the reason assigned, or by subsequent ambiguous words, or by inference and argument from other parts of the will, and accordingly such a devise is not affected by a subsequent inaccurate recital of or reference to its contents, though recourse may be had to such reference to assist the construction in case of ambiguity or doubt." The 22d rule of Mr. Jarman also applies. 1 Redfield on Wills, 428–429, and cases cited. Mr. Jarman's rules have acquired in some degree the weight of authority. 1 Redfield on Wills, p. 425–426. The clause near the end of the will directing the executor to invest for accumulation, cannot refer to the residuary bequest of the personal estate, for how is it possible to *accumulate* to pay a *residuum?* To direct an investment and accumulation of a small sum to pay what would remain beyond a large sum, would be absurd, and no person is presumed to intend an absurdity. The similarity of the language employed in the first and last sections of the will is worthy of notice, as indicating that, though separated in the will, they actually belong together. In each section the words used are "*debts, charges and legacies.*" The position of the last clause directing investment, ought to be changed. It naturally and properly should be placed just before the clause which names the executor. Words, clauses and whole paragraphs may be transposed, with a view to show the intention of the testator. 1 Redfield on Wills, 431–432. The word property, in the final clause, must be construed to mean REAL property. The ancient doctrine that the word "*property*" applied only to personalty, was long ago abandoned by the courts, and it is now held to refer either to realty or personalty as the tenor of the will may indicate. We quote from 2 Redfield on Wills, p. 689, § 5. "In most of the cases above referred to," (*Grayson* v. *Atkinson,* 1 Wilson, 333 ; *Fletcher* v. *Smiton,* 2 T. R., 656 ; *Smith* v. *Coffin,* 2 H. Bl. 444 ; *Doe* d. v. *Lainchburg,* 11 East, 290 ; *Edwards* v. *Barnes,* 2 Bing. N. C. 252, 6 Moore's P. C. C.

76,) the words " estate " or " property " which were held to embrace real estate, were preceded by particular devises of real estate, but that circumstance, although favoring the more enlarged import of such general words, is not essential to that construction. 1 Redfield on Wills, p. 691, § 11. "But we understand that the general rule of construction in regard to the import and extension of the words " estate," " property," &c., is now settled as already stated, and that it is now considered that these terms shall be regarded as intended to include real estate, unless there is something in the will which, with reference to such surrounding circumstances as are properly admissible in aid of the construction, fairly justifies the conclusion that they were not intended to be used in that enlarged sense. 1 Jarman, (Eng. ed.) 1861, 692; Bayley J. in *Doe* v. *Morgan,* 6 B. & Cr. 512; *Patterson* v. *Huddart,* 17 Beav. 210. The testatrix made her will only a short time previous to, and in contemplation of, death, and must have known the amount of her personal property at that time, and that even if her real estate should be sold for much less than its value, the whole property would greatly exceed the sum necessary for the payment of her debts and legacies. She could not therefore have intended that the clause directing investment should apply to her personal estate. The personal estate is not given to the executor in trust; it is given to Charles W. Lawton, John S. Douglas, Jr., and Oscar Douglas, in plain and unmistakable terms. The *proceeds* arising from the sale of the real estate must be treated as *real estate.* The claim of the general legatees, that the real and personal property constitute together a common fund, has no foundation in law. The early cases go so far as to separate a fund arising from the sale of real estate from personal property, even when the testator expressly directs that such fund be regarded as personal. *Countess of Bristol* v. *Hungerford,* 2 Vernon, 645.

The interpretation for which the general legatees contend is manifestly unjust; for supposing the sum arising from the sale of the real estate should amount to more than enough to pay the debts, legacies, charges, &c., the surplus could not go to the

residuary legatees, but would pass to the heir. The two funds must therefore be considered as separate, for it would be grossly inequitable to call upon the residuary legatees to supply a deficiency, when, under no circumstances, could they derive benefit from a surplus resulting from a sale of the real estate. It is clear that, where a testator directs real estate to be converted into money, for certain purposes, and the trusts of the will directing the application of the money, either as originally created, or as subsisting at the death of the testator, do not exhaust the whole beneficial interest, such unexhausted interest, whether the estate be eventually sold or not, belongs to the heir as real estate undisposed of. The heir is excluded, not by the direction to convert, but by the disposition of the converted property, and so far only as that disposition extends. Jarman on Wills, Fourth Am. Ed. 504, § 14, quoting *Wilson* v. *Major*, 11 Vesey, 205. Ib. page 504. And the same principle, it is now settled, applies in the converse case of money being directed to be laid out in land, which is then devised for a limited estate only ; the fund ultra that interest, though eventually turned into land, goes as personal estate undisposed of to the residuary legatee or next of kin of the testator, on the ground that the will operates to convert the fund so far only as it disposes of it. *Fletcher* v. *Ashburner*, 1 Bro. C. C. (Perkins ed.) 497–503, note (a) and cases cited. 2 Story, Eq. Jur. § 790 and notes. Ib. page 505. The testator devised all his real and personal estate in trust, to be sold and converted into money to pay debts, charges and funeral expenses ; and the overplus to be paid to certain persons (to whom he had bequeathed pecuniary legacies) in proportion to their respective legacies. Some of these legatees died in the testator's lifetime ; and on a question whether their lapsed shares belonged to the heir at law or next of kin of the testator, Lord Thurlow at first inclined to the opinion that the next of kin were entitled, but upon further argument his Lordship decided in favor of the heir. He said that he used to think, when it was necessary for any of the purposes of the testator's disposition to convert land into money, that the undisposed of money would be personalty ; but the cases fully proved the contrary.

Ib. page 509. Upon the principle that real estate directed to be sold is converted only for the purposes of the will, it was held by Sir W. Grant, (*Gibbs* v. *Ongier*, 12 Ves. 413, Sumner's ed., Perkins note [a]) that such a devise in trust to pay certain legacies did not throw open the fund to simple contract creditors, though he said that a substantive and independent intention to turn real estate into personalty, at all events, would have that effect. *Kidney* v. *Coussmaker*, 1 Ves. (Sumner's ed.) 436, note (a) and case cited. Such a conversion, however, as that referred to by his Honor, must be of a special kind. It must have no specified object, for a specification of the object, we see, will confine it, or it must contain some expressions showing that it is not so confined. In short, it must be manifest that the property is to be considered as personalty, quoad this purpose, or in other words, that the fund is intended to be subjected to the claims of simple contract creditors. Ib. page 510. In further confirmation of the principle in question, it is now settled that the undisposed of residue of moneys to arise from the sale of real estate will not pass under a general bequest of personalty in the same will, unless the testator expresely declare that it shall be considered as part of his personal estate. However clear this point might seem to be upon principle, the authorities, until recently, had left it in some doubt. *Mallaber* v. *Mallaber*, Cases Temp. Talbot 78, ante p. 357, *Maugham* v. *Mason*, 1 Ves. & B. 416 stated post, 565, also observations of Sir J. Leach, M. R., in *Phillips* v. *Phillips*, 1 My. & K., 660, 11 Ves. 205 ante p. 321, *Kellett* v. *Kellett*, 3 Dow. 248. Ib. page 512, quoting from *Maugham* v. *Mason*, Ves. & B. 410. Sir W. Grant, M. R., "decided the case upon the general principle that, where there was a direction to sell land for a particular purpose, the surplus did not form part of the personal estate so as to pass by the residuary bequest. The arrangement of the several clauses of the will ought to receive attention. The analysis may be stated as follows: 1. Devise of all *real estate* with power of sale, in trust, to pay *debts, charges and legacies.* 2. Statement of legacies. 3. Appointment of executor. 4. Directions respecting burial, grave-yard, &c. 5. Bequest of all residue and

remainder of *personal* estate to C. W. Lawton, John S. Douglass, Jr., and Oscar Douglas.    6. A direction to invest for accumulation for the payment of *debts, charges and legacies.*    It will be noticed here that the clause appointing the executor precedes the bequest of the personalty, that such a position is extraordinary, and that it clearly indicates an intention to create two separate funds.    The one *real* and the other *personal.* The same words, *debts, charges and legacies* are used in the first and last operative clauses of the will, and this fact furnishes additional proof of the relation of the one to the other.    The testatrix intended to create two funds, and indicated the disposition of each.    The *personal fund* being of an amount fixed in value is given to one object.    The *real fund* is given to another object, but being of an unascertained value, the testatrix directs, that after sale, the proceeds, if they fall short, shall be invested for accumulation until the deficiency is supplied.    The real estate and the personalty are separated by a broad line, which the executor in his capacity of trustee may not cross.    " The residue and remainder of my personal estate " means, what may be left of said personal estate beyond specific legacies.    In the clause of the will which directs the executor to invest upon the happening of a certain event, the testatrix made provision for the payment of her debts, one of the objects to which the proceeds arising from the sale of the *real estate* were devoted, and authorized the investment of the balance only.    She must, therefore, in dictating that final clause, have referred solely to the devise of her real estate to her executor, in trust, and could have had no thought of blending her personal property therewith.

For the reasons above set forth, and upon the authorities above cited, we ask this Honorable Court to instruct the said complainant to pay to the residuary legatees the personal property, which came into his hands as executor, excepting only that which was specifically bequeathed, and to invest the balance of the fund, arising from the sale of the real estate in said will devised to him upon trust, which remains after the payment of *just debts and charges,* and the same to accumulate for the several purposes in the said will set forth.

*George H. Browne*, for the other legatees, argued upon the following brief:—

I. *Personal* estate is always the fund from which debts, charges, specific and general legacies, are to be paid, unless there is some special provision in the will to the contrary, and in restraint of its application. Indeed, this principle is carried to the extent of requiring the executor to exhaust the *whole of the personal* before resort can be had to the real estate, even where they are made a charge on the real. 2 Redfield on Wills, p. 871 and cases cited, *et passim.*

II. There are no provisions or words in the will before the court that tend to alter, or even restrict, this general rule. On the contrary, the very provision and words relied on by the residuary legatees to discharge the personal estate of testatrix from this liability, viz., " I give and devise to my executor, all my real estate situate in East Providence   *   *   *   * in trust, to be sold by him as soon as may be after my decease, at public auction, and the proceeds of such sale to be used by him in the payment of the debts and charges hereinafter to be named and the legacies bequeathed," are confirmatory of the application of the rule to this case, and evidence of a desire and intention on the part of testatrix that it should be so applied, and designed by her to aid the executor in carrying out that rule and her intention. All her property is thereby reduced to personalty, and the proceeds of the *real*, as well as personal, to be used in payment of the debts, charges and legacies generally bequeathed.

III. The will distinctly subjects *all her property* to the payment of the debts, charges and legacies. Testatrix directs the executor to pay all her just debts, funeral charges, the legacies herein bequeathed, and the expenses of settling her estate, and where the legacies shall be payable, and *then*, after all that is done, provides that all the *residue* of the personal estate shall be divided equally between Charles W. Lawton and the two minor Douglasses. This clearly and unavoidably implies that so much of the personal estate is to be used for the above purposes as is needed, as the residuary legatees are to have nothing

until all the debts, charges and specific and general legacies, have been paid, for it expressly declares they are to have only the "residue." But the next clause puts the question of what property of testatrix executor is to use in payment of debts, charges, and specific and general legacies, beyond all dispute ; for she says, " in case my *property* should not be sufficient to pay the debts, charges and legacies, above mentioned, then, &c." Nowhere in the will is he restricted to the use for those purposes of the real estate or its proceeds, but here *all* her property is distinctly spoken of and recognized as a fund from which the debts, charges and legacies are to be paid, and the first clause is merely subjecting to the payment of debts, charges and general legacies, what would not otherwise be subjected to or liable for the payment thereof, viz., the real estate. The claim of these defendants seems too well established by these citations to need further argument. Defendant, Charles W. Lawton, should be decreed to pay all expenses of this proceeding, or at least they should be a charge on the general fund.

The opinion of the court was read by DURFEE, J. This is a bill in the nature of a bill of interpleader, brought for the purpose of having the court construe the will of Sarah J. Monroe, late of East Providence, deceased. Sarah J. Monroe died, leaving real estate in East Providence, estimated to be worth $2,000, and which sold at auction for but little over $1,800, and personal property worth about $2,000. She left few or no debts except those incurred in her last sickness and for her funeral expenses. The first clause of her will is as follows:—

" I give, devise and bequeath to my Executor all my real estate, situated in the town of East Providence, in the county of Providence, in the State of Rhode Island, in trust, to be sold by him, as soon as may be after my decease, at public auction, and the proceeds of such sale, to be used by him in the payment of the debts and charges hereinafter named, and the legacies bequeathed."

Then follow various clauses making bequests of money, and of the annual interest of certain sums of money to be paid to legatees during life, the principal after their death to others,

amounting in all to $3,200, also a bequest of a note, payable to the testatrix, for $200, to the maker, and bequests of some specific articles, mainly of wearing apparel and household furniture, of comparatively small value. The testatrix appoints William S. Monroe her executor, and gives him certain directions. The will concludes as follows :—

" I also give and bequeath to the said Charles W. Lawton, John S. Douglass, Jr. and Oscar Douglass, all the residue and remainder of my personal estate to be equally shared by and between them. I direct my executor, in case my property should not be sufficient for the payment of the debts, charges and legacies herein mentioned, that, after the payment of my just debts and the charges above mentioned, the balance shall be placed at interest by him until the amount shall be sufficient to pay said legacies."

The residuary legatees claim under the bequest of "all the residue and remainder of my personal estate," (to use the words of the will) all the personal estate left by the testatrix, except what is given by way of specific legacies, and contend that the other legacies, and the debts, are to be paid out of the proceeds of the real estate. We do not deem this a reasonable construction of the will. The pecuniary legacies alone, exclusive of debts, amount to $1,200 more than the estimated value of the real estate, and to nearly $1,400 more than the real estate actually sold for. Some of these legacies, are legacies of the interest of specified sums, to be paid annually to persons of advanced age. Another legacy, is a legacy of $300 to the First Baptist church in East Providence, to be used towards the purchase of an organ for the use of said church, *whenever such purchase shall be made.* The inference from these legacies is that the testatrix contemplated an early payment, or at least an early readiness to pay ; and that she could not have looked to such delay as would result in carrying out the last clause of her will, if the fund for the payment of her debts and pecuniary legacies is to be derived solely from her real estate. The counsel for the residuary legatees, in order to reconcile the last clause with his construction, has to suppose that the word "property" in the

clause means "real" property simply,—an arbitrary restriction of the natural meaning of the word, for which we see no sufficient warrant. We think that when the testatrix says, "in case my property should not be sufficient," it is most natural to suppose she meant all her property, real and personal, and that if she had meant to confine the meaning of the word to real property, she would have said "real property." It is true that under the construction which we adopt, we give to the words, " all the residue and remainder of my personal estate," the same meaning as if she had said " all the residue and remainder of my estate," without reference to whether such remainder was real or personal; but it is to be remembered that she had already in the first clause ordered her real estate to be converted into money, and nothing would be more natural than that, in making this residuary bequest, her mind should go forward to the period when the residue, if any, should be ascertained,—a period when all her property would be personal property.

We think that under this will the residuary legatees are entitled only to what remains after the payment of the debts and of the legacies given in the will, and that the decree should be drawn accordingly.